IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FROST SOLUTIONS, LLC, | |
| Plaintiff, | CASE NO.: 1:22-CV-06910 |
| vs. | Hon. J. Martha M. Pacold |
| CORY MOORE, | Hon. Mag. J. Jeffrey T. Gilbert |
| Defendant. | Jury Demanded |

**DEFENDANT CORY MOORE'S MEMORANDUM IN SUPPORT OF HIS MOTION TO COMPEL DISCOVERY AND FOR AN AWARD OF FEES**

I. **INTRODUCTION**

In a case about trade secrets and confidential information, discovery into a plaintiff's alleged trade secrets and confidential information, plaintiff's basis for misappropriation, and damages are of the utmost importance. The burden for identifying trade secrets and confidential information is purposefully difficult to meet, and plaintiffs are not and should not be able to skirt by on a "because I said so approach" – defendants are entitled to discovery on these issues. Notwithstanding this fact, for the better part of four months, Frost Solutions, LLC ("Frost") has failed to meaningfully respond to discovery and correct discovery deficiencies, despite multiple attempts by Defendant Cory Moore to address and identify these issues. Worse, Frost consistently makes commitments to produce documents, supplement discovery, and address deficiencies, but fails, without excuse, to meet those commitments. Defendant Cory Moore cannot tolerate further delay and should not have to file a motion to get Frost to respond to discovery in a trade secret case Frost is pursuing. Frost must produce documents, supplement its discovery responses and address deficiencies and Moore is entitled to fees for having to pursue this motion.

II. **BACKGROUND FACTS**

On October 10, 2023, Moore served Frost with his first set of interrogatories and document requests (the "Discovery Requests"), making Frost's deadline to respond November 9,

2023. (March 8, 2023 Declaration of Christie B. Carrino ("Carrino Decl.") ¶ 2, Ex. 1 and 2.) The deadline passed with no response or communication from Frost. (*Id*. ¶ 3.) Moore sent an e-mail on November 13, 2023, requesting responses to the discovery. (*Id*. ¶ 4, Ex. 3.) Frost never responded to that e-mail, however, so Moore sent another e-mail on November 21, 2023, stating that Frost needed to provide its discovery responses by the end of the week to avoid motion practice. (*Id*. ¶ 5, Ex. 3.) Frost's counsel finally responded, by phone, indicating more time was needed and that Frost would respond no later than December 1, 2023. (*Id*. ¶ 6.) Moore was clear that discovery responses were needed by that date to avoid motion practice. (*Id*.) Further, Moore asked that Frost memorialize the request for additional extension in an e-mail, but its counsel never did, so Moore's counsel memorialized the request instead, on November 27, 2023. (*Id*. at ¶ 7, Ex. 3). December 1, 2023 passed with Frost serving no written responses, producing no documents, and requesting no further extension. (*Id*. ¶ 8.)

Moore's counsel reached out again on December 7, 2023, alerting Frost's counsel they were prepared to file a motion to compel on Monday, December 11, unless Moore received Frost's responses on Friday, December 8. (*Id.* ¶9, Ex. 3.) Frost's counsel responded that he could provide responses by Monday, December 11, and Moore's counsel agreed. (*Id.* ¶ 10, Ex. 3.) Frost served written responses to the document requests and produced a set of documents on December 11 and served unverified interrogatories on December 12. (*Id.* ¶¶ 11-12, Exs. 4, 5.)

Later that day, following a preliminary review of the production and written responses, Moore's counsel requested a meet and confer later that week given certain deficiencies in the responses. (*Id.* ¶ 13, Ex. 6.) Frost's counsel responded that he was not available and noted that his office would send times for a meet and confer the next week. (*Id.* ¶ 14, Ex. 6.) The meet and confer was set for December 19 at 4:00 p.m.; however, Frost's counsel was late to the call. (*Id.* ¶¶ 15-16, Ex. 6.) Once he joined, Frost's counsel became unprofessional and combative, using curse words and making it difficult to address the deficiencies with each of the topics. (*Id.* ¶ 16, Exs. 7-8.) Rather than continue this unproductive call, Moore's counsel relayed that it would be

sending meet and confer correspondence later that week to address the deficiencies they were attempting to discuss on the meet and confer call. (*Id.*)

On December 22, 2023, Moore's counsel sent Frost's counsel a detailed letter outlining Frost's discovery deficiencies and requested that the deficiencies be resolved by January 5, 2024 to avoid motion practice. (*Id.* ¶ 17, Ex. 8.) Moore's counsel did not receive a reply until January 2, 2024, whereby Frost's counsel stated that he would instead supplement by January 19, 2024. (*Id.* ¶ 18, Ex. 9.) Moore's counsel agreed to the January 19 deadline, and Frost provided supplemental written responses and additional documents on that date. (*Id.* ¶¶18, Exs. 9-11.)

However, these supplemental responses remained deficient, and Moore's counsel followed up with an additional meet and confer letter addressing the deficiencies on February 9, 2024. (*Id.* ¶ 20, Ex. 12.) The second meet and confer letter again outlined in detail the remaining discovery deficiencies and requested Frost to address them by February 23, 2024. (*Id.*)

Again, Moore did not hear from Frost until the eve of the deadline. Frost responded on February 19, 2024 that he would be unable to address the letter until the following week due to a trial. (*Id.* ¶ 21, Ex. 13.) Moore's counsel granted Frost until Tuesday, February 27 to respond to the deficiencies. (*Id.* ¶ 22, Ex. 13.) February 27 came and went with no response or supplementation. (*Id.* ¶ 23.) Instead, Frost's counsel replied on February 28 that he would be sending a response that day. (*Id.* ¶ 24, Ex. 14.) Again, this response never came. (*Id.* ¶ 25.) Instead, Frost's counsel requested a call on February 29 on which he wanted to discuss Moore's second meet and confer letter. (*Id.* ¶ 26, Ex. 14.) After discussing particular items, Moore's counsel asked when Frost realistically would be able to provide supplemental written responses and additional documents. (*Id.* ¶ 27.) Frost's counsel said he would be able to do so by March 6, 2024. (*Id.*) On this basis, Moore's counsel agreed to wait to file a motion until responses came on March 6, but made clear that due to this lengthy meet and confer process and Frost's ongoing requests for extensions without meeting deadlines and still providing deficient information, Moore would be unable to grant further extensions and would be moving on any remaining deficiencies. (*Id.*)

3

On the evening of March 6, Frost's counsel did not provide supplemental written responses, but instead sent a response letter to Moore's February 9 meet and confer letter. (*Id.* ¶ 28, Ex. 15.) Frost also produced only two additional documents. (*Id.* ¶ 28.) Following review of the letter and documents, Moore's counsel alerted Frost's counsel it would be filing this motion. (*Id.* ¶ 29, Ex. 16.)

### III.  REMAINING DISCOVERY DEFICIENCIES AND REQUESTED RELIEF

While Frost addressed and resolved some of the deficiencies Moore highlighted throughout the meet and confer process, multiple unreasonable deficiencies still remain. These are outlined below.

**a. Interrogatory Numbers 3, 7, 8, and 9 and RFP 24: Particular items of confidential information or trade secrets allegedly used in solicitation on a client-by-client basis**

Interrogatory 3 requested: "For each customer [you contend Moore wrongfully solicited, diverted, or stole], identify (i) the amount of damages Frost seeks and (ii) the confidential information or trade secret you contend Moore used in his solicitation or diversion efforts, if any. With respect to (ii), state whether Frost contends the information identified is confidential information or a trade secret."

Interrogatory 7 requested: "Identify with particularity the trade secrets you reference in Paragraph 42 of the Amended Complaint, which reads "Moore has obtained an economic benefit from the theft of Frost's trade secrets, including the stealing of Frost's existing and prospective customers and business opportunities."

Interrogatory 8 requested: "State all facts supporting Frost's allegations in Paragraph 43 of the Amended Complaint, which reads "Moore acquired and used Frost's trade secrets while employed by Frost and knew or should have known this information was not to be used after his departure from Frost. Despite this, Moore used this information to solicit Frost's customers."

Interrogatory 9 requested: "Identify with particularity the trade secrets you reference in Paragraph 43 of the Amended Complaint, which reads "Moore acquired and used Frost's trade

4

secrets while employed by Frost and knew or should have known this information was not to be used after his departure from Frost. Despite this, Moore used this information to solicit Frost's customers."

RFP 24 requested: "Produce all documents that [support] Frost's allegations in Paragraph 43 of the Amended Complaint . . . ." (*See* Carrino Decl. Exs. 1, 2.)

While Frost provided an itemized spreadsheet in response to Interrogatory 3, it has done nothing to itemize the confidential information or trade secrets allegedly used for each client for which Frost is claiming damages or state with particularity what those pieces of confidential information or trade secrets are. Instead it provided only that "Defendant used knowledge of who Frost's active customers were, the key point of contact for each customer, the duration and renewal date of each contract, the price point at which each subscription was sold and issues customers may be having with their units/service. Please also see answer to interrogatories #7 and #8." (*See id.* Exs. 10, 12.)

As supplemented, Frost's response to Interrogatory 7 only includes categories of what allegedly constitutes trade secrets; response Interrogatory 8 contains references to complaint allegations and refers to responses to Interrogatories 7 and 3; and response to Interrogatory 9 contains reference to complaint allegations and refers to the response to Interrogatory 8. RFP 24 identifies the confidentiality agreement and alludes to developing additional information in discovery. (*See id.* Exs. 10-12.)

Moore outlined in detail in each of its meet and confer letters that these responses were deficient because they provided only categorical information, did not identify which information was used for which client, did not identify whether the information used constituted a trade secret or confidential information, and did not provide the factual predicate for the identified complaint allegations. (*See id.* Ex. 12.) Despite this clarity, in its most recent correspondence, with regard to Interrogatory 3, Frost states only "You state that we do not itemize damages by each customer. This is incorrect. The spreadsheet produced does itemize by each customer so we do not understand the issue here." (*See id.* Ex. 15.) Frost further provides that it disagrees that the

answers to Interrogatories 7 and 8 are deficient and that it will further develop specifics through additional discovery, and that it believes its response to Interrogatory 9 is sufficient. (*See id.*)

Moore could not be more clear in what it is asking for – part (ii) of Interrogatory 3, the factual basis for certain complaint allegations and supporting documents, and particularized identification of alleged trade secrets. This information is obviously relevant and goes to the heart of Frost's claims – i.e. what information Moore allegedly misappropriated for each customer for which he is claiming damages. It is Frost's burden not only to show amount of damages and to identify with particularity what constitutes a trade secret or confidential information, but to show that confidential information or trade secrets were actually used to solicit clients. Frost's failure to address these issues in any meaningful way despite being on notice of what Moore is seeking is inexcusable and prevents Moore from formulating a meaningful defense to this litigation and seek any additional necessary discovery.

Moore requests the Court order Frost to supplement its responses to (a) Interrogatory 3 to fully respond to part (ii) by identifying on a client-by-client basis the trade secrets and/or confidential information Moore allegedly used to solicit each client, or if it cannot do so without additional discovery to so state in amended interrogatory responses; (b) Interrogatory 7 to identify with particularity and not just categorically the trade secrets referred to in paragraph 42 of the Amended Complaint, or if it cannot do so without additional discovery to so state in amended interrogatory responses; (c) Interrogatory 8 to state all facts that support the allegation that Moore acquired Frost's trade secrets and used them to solicit, as alleged in paragraph 43 of the Amended Complaint, or if it cannot do so without additional discovery to so state in amended interrogatory responses; (d) identify with particularity and not just categorically the trade secrets referred to in paragraph 43 of the Amended Complaint, or if it cannot do so without additional discovery to so state in amended discovery responses; (e) produce documents that support the factual allegations of paragraph 43 of the Amended Complaint, or state no other documents exist.

>   b. **Interrogatory Number 5 and RFP 2: Identification of employees from Frost or its predecessor that resigned since October 1, 2021 and date of resignation and resignation notice/correspondence**

Interrogatory 5 requested: "Identify all employees of Frost Control or Frost who resigned on or after October 1, 2021 (within approximately six months of Moore's resignation), including the date of resignation for each such employee."

RFP 2 requested: "Produce all letters, e-mails, and other correspondence by which employees of Frost or Frost Control gave notice of their resignation from October 1, 2021 (within approximately six months of Moore's resignation) to the present." (*See id.* Exs. 1, 2.)

With regard to the interrogatory, Frost originally only identified Patrick Baglien and Christopher LaRue but did not provide resignation dates and stated that investigation continued with regard to others. (*See id.*, Ex. 10, 12.) In Frost's March 6, letter, it provided resignation dates for Messrs. Baglien and LaRue and also included the names of twelve additional employees, but did not provide resignation dates for these twelve. (*See id.,* Ex. 15.) At this juncture, this information is squarely with the possession of Frost and should be provided. There is no reason for the ongoing delay and piecemeal identification of employees and resignation dates.

With regard to the document request, while Frost withdrew its original objections and stated it would produce documents "relating to other employee's resignations" it has only provided certain documents related to Messrs. Baglien and LaRue. (*See id.* ¶ 28 and Exs. 11, 12, 15.) It has not provided any documents or correspondence constituting notice of resignation with regard to the other employees identified in the response to Interrogatory 5.

Moore requests the Court order Frost to formally supplement its interrogatory responses to (a) provide the resignation dates for Messrs. Baglien and LaRue and identify the twelve additional employees, as provided in Frost's March 6 letter; and (b) provide the resignation dates of the twelve additional employees. Moore further requests the Court order Frost to provide resignation correspondence related to all individuals identified in the response to Interrogatory 5.

7

### c. Interrogatory Number 6 and RFP 23: Factual predicate for complaint allegations

Interrogatory 6 requested: "State all facts supporting Frost's allegations in Paragraph 42 of the Amended Complaint, which reads "Moore has obtained an economic benefit from the theft of Frost's trade secrets, including the stealing of Frost's existing and prospective customers and business opportunities."

RFP 23 requested: "Produce all documents that support Frost's allegations in paragraph 42 of the Amended Complaint . . . ." (*See id.* Exs. 1, 2.)

As supplemented, Frost's interrogatory response states "The economic benefit is derived from the Defendant taking Frost customers and receiving a commission on those customers taken. The folder #10 and Supplemental Production of 1/19/24 set forth the contracts lost that ultimately went to TAPCO. Plaintiff will need discovery from the Defendant to obtain the exact economic benefit to the Defendant has he is in possession of evidence of commissions earned." (*See id.* Exs. 10, 12.) This response, including the document at folder #10 which is a damages calculation, only addresses damages and does not provide any facts regarding the alleged theft of trade secrets or stealing of Frost's existing or prospective customers and business opportunities. That Frost has not addressed this portion of the Interrogatory is unreasonable.

Moore requests that the Court order Frost to formally supplement its interrogatory responses to provide the factual basis of the allegations in Paragraph 42 of the Amended Complaint regarding the theft of trade secrets and stealing of clients, and provide documents supporting these allegations, or if it cannot do so without additional discovery to so state in amended discovery responses.

### d. RFPs 3 and 7: Documents related to the sale/acquisition of Frost Control

RFP 3 requests: "Produce all documents relating to Frost Control's efforts to sell itself or its assets, including but not limited to, documents reflecting your negotiations with Frost Control and your internal communications regarding the purchase of Frost Control or its assets.

RFP 7 requests: "Produce all documents you received in connection with due diligence as to your purchase of Frost Control or its assets, including, but not limited to, Frost Control financial statements and any other document that reflects Frost Control's performance or financial status." (*See id.* Ex. 2.)

Frost objected to these requests only on the bases that they seek proprietary and confidential information and that they are not likely to lead to the discovery of admissible evidence. (*See id.* Exs. 4, 12.)

The parties have now agreed to, and the Court has entered, a Confidentiality Order to govern confidential and proprietary information, so the confidentiality objection is moot. Further, the objection that these requests are not likely to lead to the discovery of admissible evidence is no longer a valid objection under Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.")  However, even if it were, Frost has done nothing to expand on why such documents would be unlikely to lead to the discovery of admissible evidence or how these documents are outside the scope of Rule 26(b)(1). On the contrary, these documents are highly relevant because they go to the causation element of each of Frost's claims against Moore – if Frost Control was insolvent and seeking buyers, loss to Frost in the form of customer attrition was inevitable and cannot be based on any actions Moore is alleged to have taken. Further, these documents may show that Frost Control provided Frost with information regarding customer attrition pre-acquisition. If Frost knew Frost Control was losing clients prior to the acquisition, that risk was or should have been accounted for in the purchase price.

Moore requests the Court order Frost to produce all documents and correspondence responsive to RFPs 3 and 7.

e. **RFP 8: Missing attachments related to customer complaints**

RFP 8 requests: "Produce all customer complaints regarding Frost Control, including, but not limited to, customer reports of lack of communication with Frost Control." (*See id.,* Ex. 2.)

9

Frost produced certain email communications responsive to this request in pdf rather than native form; however it is clear from the face of many of the emails that there were attachments that were not included in the production. Moore outlined this deficiency in his February 9 letter, but Frost did not respond to it in its March 6 letter. (*See id.*, Exs. 12, 15.)

Moore requests the Court order Frost to produce complete copies of these emails and attachments.

### f. RFPs 11 and 22: Missing correspondence with customers and documents related to measures undertaken to safeguard trade secrets

RFP 11 requests: "For any customer upon which Frost relies for its damages, produce all correspondence with that customer from January 1, 2020 to the present."

RFP 22 requests: "Produce all documents reflecting the "reasonable measures to safeguard its trade secrets," as alleged in paragraphs 39-40 of the Amended Complaint, including, but not limited to, (i) the referenced confidentiality agreements, (ii) the "policy of safeguarding its systems with password productions," and (iii) the "policy of terminating access to confidentiality information at the conclusion of an individual's employment." (*See id.*, Ex. 2.)

With regard to RFP 11, Frost did not object to producing communications with customers on who it is relying for damages and referred to a damages spreadsheet outlining damages; however, Frost has produced no communications with the customers reflected on that spreadsheet. (*See id.* Exs. 4, 11-12.) With regard to RFP 22, Frost stated it would produce documents responsive to this Request but has yet to make a production. (*Id.*) Moore pushed for these communications and documents in his February 9 letter. In its March 6 letter, Frost stated it was standing on its previous production with regard to RFP 11, and did not address RFP 22. (*See id.*, Ex. 15.)

Moore requests the Court order Frost to produce all documents and communications responsive to RFPs 11 and 22.

g. **RFP 19: Missing compensation/commission plans and agreements**

RFP 19 requests: "Produce all compensation agreements and commission plans applicable to Moore (i) at the time of his resignation and (ii) at the time Moore signed the Confidentiality Agreement." (*See id.* Ex. 2.)

Frost only referred generally to other documents produced in its response to this RFP; however, the production does not contain any commission plan or compensation agreement. Moore brought this to Frost's attention in his February 9 letter. (*See id.* Ex. 4, 11-12.) However, in its March 6 letter, Frost only stated that it stands on its production. (*See id.* Ex. 15.) It is unclear to Moore whether such documents exist, but if they should be produced. At minimum Frost should give Moore a clear response to this request.

Moore requests the Court order Frost to produce all documents and communications responsive to RFP 19 or state no documents exist.

h. **RFP 25: Documents and correspondence that refer to Moore, TAPCO or the Litigation**

RFP 25 requests: "For the time period of March 1, 2022 to the present, produce all documents and correspondence, including internal correspondence, that regard Moore, TAPCO, or the Litigation." (*See id.*, Ex. 2.)

Frost objected on the basis that the request sought proprietary and confidential information. Frost provided no other objection as a basis to withhold such documents. (*See id.* Ex. 4.) In both its meet and confer letters, Moore reiterated that the objection is moot given the Confidentiality Order and requested Frost withdraw the objection and produce documents. (*See id.* Exs. 8, 12.) Frost has continued to stand on its objection without further elaboration. (*See id.* Ex. 15.) There is absolutely no basis to withhold documents responsive to these request and they must be provided.

Moore requests the Court order Frost to produce all documents and communications responsive to RFP 25.

IV.     **ARGUMENT**

Moore made numerous attempts over the course of four months to procure Frost's complete discovery responses, but Frost has refused to provide certain documents and supplement interrogatory responses without valid excuse and has strung Moore along with multiple requests to delay filing this motion. It is evident Frost will not provide sufficient and complete discovery responses absent motion practice, which Moore should not have had to pursue. Moore is prejudiced by Frost's lack of meaningful response because he faces seven causes of action that include serious allegations of wrongdoing, including allegations that Moore misappropriated Frost's trade secrets. (*See* Am. Compl.) To appropriately defend the case, Moore will pursue additional rounds of discovery once Frost responds to his preliminary set of document requests and interrogatories, and Moore seeks to move forward with defense of what he views as meritless claims. Frost cannot embroil Moore in litigation, make extreme allegations, and then itself fail to fully and meaningfully participate in discovery.

The Court should not only compel Frost's immediate and full response to Moore's discovery, but also award Moore his attorney's fees in bringing this motion, in accord with FRCP 37. Specifically, Rule 37 states that "the court *must,* after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37 (a)(5)(A) (emphasis added). Frost's failure to comply with its discovery obligations should not be countenanced and, instead, Moore's motion granted in full.

V.     **CONCLUSION**

For all the reasons set forth above, the Court should grant Moore's motion to compel and award him the reasonable attorney's fees incurred to pursue this motion.

Dated this 8th day of March, 2024.  By: */s/Christie B. Carrino*
Maria L. Kreiter, *admitted pro hac vice*
Christie B. Carrino, *admitted pro hac vice*
GODFREY & KAHN, S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5615
414-273-3500
mkreiter@gklaw.com
ccarrino@gklaw.com

Erik J. Ives
FOX SWIBEL LEVIN & CARROLL LLP
200 W. Madison Street, Suite 3000
Chicago, IL 60606
312-224-1200
eives@foxswibel.com

*Attorneys for Defendant Cory Moore*

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that, on March 8, 2024, she caused the foregoing document to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which is also served upon counsel for all parties of record.

*/s/Christie B. Carrino*
Christie B. Carrino

30748104.1