IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FROST SOLUTIONS, LLC, )
)
Plaintiff, )
)
vs. )   Case No. 1: 22-cv-06910
)
CORY MOORE, )
)   Magistrate Judge Jeffrey T. Gilbert
)
Defendants. )

## ORDER

This matter is before the Court on Defendant's Motion to Compel Discovery and for an Award of Fees [ECF No. 68]. For the reasons discussed below, the Motion is granted in part and denied in part.

### A. Defendant's Interrogatory Nos. 3, 7, 8, and 9 and Request for Production No. 24

Defendant Cory Moore ("Defendant" or "Moore") first seeks to compel Plaintiff Frost Solutions, LLC ("Plaintiff" or "Frost Solutions") to identify the trade secrets or confidential information that Plaintiff alleges Defendant used to solicit Plaintiff's clients in response to Defendant's Interrogatory Nos. 3, 7, 8, and 9, and to produce documents supporting these claims in response to Defendant's Request for Production No. 24. Memorandum in Support of Motion to Compel Discovery [ECF No. 69] ("Motion") at 4-6. Plaintiff responds that it sufficiently identified the trade secrets and further argues it needs discovery from Defendant and third parties to provide more specific details about what Defendant disclosed to Plaintiff's customers. Plaintiff's Response to Defendant's Motion to Compel [ECF No. 77] ("Response") at 1. The Court agrees that Plaintiff must provide more information about its trade secrets and Defendant's alleged use of those trade secrets.

1

Defendant's Interrogatory No. 3 ("ROG 3") requested, in relevant part, that Plaintiff "identify . . . the confidential information or trade secret you contend Moore used in his solicitation or diversion efforts" for each customer that Plaintiff alleges Defendant wrongfully solicited. Motion [ECF No. 69] at 4. In response to ROG 3, Plaintiff stated, "Defendant used knowledge of who Frost's active customers were, the key point of contact for each customer, the duration and renewal date of each contract, the price point at which each subscription was sold and issues customers may be having with their units/service," and cross referenced Plaintiff's responses to Interrogatories Nos. 7 and 8. Plaintiff's Supplemental Answers to Defendant's Interrogatories, Exhibit A to Response [ECF No. 77-1] ("Pl. Supp. Interrog. Resp.").

Defendant's Interrogatory No. 7 ("ROG 7") requested that Plaintiff "[i]dentify with particularity the trade secrets" referenced in Paragraph 42 of the Amended Complaint. Motion [ECF No. 69] at 4. Plaintiff's response to ROG 7 cross-referenced the response to ROG 3 and further answered with the following list of "trade secrets":

- "proprietary technology, including AIMS";
- "overall computer systems and software architecture associated with AIMS technology";
- "information about product design and development";
- "customer lists";
- "customer contact information";
- "pricing information";
- "information related to specific vendor and supplier performance, as that information relates to the reliability and efficiency of the components of [Plaintiff's] specific product."

*See* Pl. Supp. Interrog. Resp. [ECF No. 77-1].

Defendant's Interrogatory No. 8 ("ROG 8") requested that Plaintiff "[s]tate all facts supporting Frost's allegations in Paragraph 43 of the Amended Complaint, which reads 'Moore acquired and used Frost's trade secrets while employed by Frost . . . [and] used this information to solicit Frost's customers." Motion [ECF No. 69] at 4. Interrogatory No. 9 ("ROG 9") requested that Plaintiff "[i]dentify with particularity

the trade secrets you referenced in Paragraph 43 of the Amended Complaint. . ." [*Id.*]
Defendant's Request for Production No. 24 ("RFP 24") sought production of "all
documents" supporting the allegations in Paragraph 43. [*Id.*]

Plaintiff's response to ROG 8 (which is cross-referenced in its response to ROG
9) states "[t]he trade secrets it is believed the Defendant used are set forth in the
answers to" ROG 3 and ROG 7. Pl. Supp. Interrog. Resp. [ECF No. 77-1]. In response
to ROG 8, Plaintiff further states "Defendant used the protected information
regarding Plaintiff's customers, pricing and contact information to improperly solicit
and obtain Plaintiff's customers. Further discovery from the Defendant is necessary
to discover the full nature and extent of the Defendant's use of these trade secrets to
solicit Plaintiff's customers." [*Id.*] Plaintiff's response to ROG 9 also cross-referenced
the response to ROG 8. [*Id.*] In response to RFP 24, Plaintiff identified its production
of Defendant's confidentiality agreement but with respect to Defendant's disclosures
to Plaintiff's customers stated, "Plaintiff is not yet privy to the extent Moore contacted
Plaintiff's customers or the communications with Plaintiff's customers but is seeking
that information in discovery." Exhibit 11 to Carrino Declaration, Plaintiff's
Supplemental Responses to Defendant's Requests for Production [ECF No. 70-11]
("Pl. Supp. RFP Resp.").

Plaintiff asserts in its Response (and in its discovery responses) that it needs
discovery from Defendant to identify the full extent of Defendant's disclosures to
customers. Response [ECF No. 77] at 1. In the Response, however, Plaintiff also says
"Plaintiff does know by the Defendant's admissions and discussion with customers
that the Defendant likely disclosed information about the Plaintiff that would
otherwise be protected." Response [ECF No. 77] at 1. Plaintiff did not disclose
information about its knowledge of "admissions" by Defendant or any discussions
Plaintiff had with customers. Although Plaintiff may seek in discovery information
about what Defendant allegedly disclosed to its customers, Plaintiff is nevertheless
obligated to supplement its very general responses to Defendant's interrogatories

with any more specific information it knows now. Plaintiff's Response to the Motion implies that Plaintiff knows more than it put in its answers to Defendant's interrogatories. Defendant should have that information before it begins to depose Plaintiff's corporate representatives because, among other things, it will help to streamline those depositions.

Defendant also takes issue with Plaintiff's "categorical" identification of its alleged trade secrets. Although Defendant does not cite any case law, "[a]s numerous courts have explained, where a plaintiff suggests that general categories of information are trade secrets, the lack of specificity greatly reduces its chances of demonstrating that a defendant has misappropriated its trade secrets." *Vendavo, Inc. v. Long*, 397 F. Supp. 3d 1115, 1130–31 (N.D. Ill. 2019) (collecting cases).

At first blush, some of the categories identified in Plaintiff's responses at least potentially identify information that could constitute a trade secret. For example, Plaintiff identifies "customer lists" and "customer contact information," including the "key point of contact for each customer," "pricing information" such as "the price point at which each subscription was sold," and "information related to the specific vendor and supplier performance, as that information related to the reliability and efficiency of the components of [Plaintiff's] specific product" including "issues customers may be having with their units/service." Pl. Supp. Interrog. Resp. to ROG 3, ROG 7 [ECF No. 77-1]. Courts have found such information could constitute a trade secret if the plaintiff satisfied the other statutory criteria of deriving value from maintaining secrecy and taking reasonable measures to protect secrecy. *See*, *e.g.*, *Vendavo, Inc.*, 397 F. Supp. 3d at 1132–34 (customer contact information and customer specific information as to preferences and "pain points"); *3M Co. v. Cont'l Diamond Tool Corp.*, 2024 WL 3199645, at *3 (N.D. Ind. June 27, 2024) ("Key customer contact information has been found to be a protectable trade secret by other courts in this circuit"); *loanDepot.com, LLC v. Schneider*, 647 F. Supp. 3d 620, 629 (N.D. Ill. 2022) ("Under Illinois law, customer lists may qualify for trade-secret protection depending

4

on the particular facts."); *Aon PLC v. Infinite Equity, Inc.*, 2021 WL 4192072, at *16 (N.D. Ill. Sept. 15, 2021) ("Confidential client information can constitute a trade secret" including potentially "the identities of [the] highest revenue generating clients, client-contact information, and client-specific information regarding needs and preferences") (collecting cases). In the Court's view, Defendant's discovery requests, calibrated to learn whether and how Plaintiff can meet its burden, are proper.

While some of Plaintiff's categories may comprise "the *type* of information that is confidential," Plaintiff must provide more detail about the information within these categories. Such detail is necessary to determine whether the information has independent value from being kept secret, as well as whether Plaintiff took reasonable steps to maintain secrecy. *See DM Trans, LLC v. Scott*, 2021 WL 4963606, at *8 (N.D. Ill. Oct. 26, 2021), *aff'd*, 38 F.4th 608 (7th Cir. 2022) (low probability of success on trade secrets claim at preliminary injunction stage where plaintiff generally described trade secrets as "customer contracts and preferences," "customer contact names and details," "customer pricing and costs," and "specific customer particularities."); *compare Vendavo, Inc.*, 397 F. Supp. 3d at 1132–34 (plaintiff introduced evidence of presentations "identifying a client's 'pain points' and providing proposed solutions to them" which court found amounted to "the background work that a competitor would have to undertake before pitching their own services to the same client"). Although Plaintiff's identification of customer lists and contact information, presumably for the specific customers Plaintiff identified in the spreadsheet attached to its discovery responses, may be sufficiently specific, Plaintiff must provide more information to identify the alleged trade secrets related to pricing and performance, including for vendors and suppliers or related to "the reliability and efficiency" of components of Plaintiff's products. Those general or categorical statements are only minimally responsive to Defendant's discovery, if that.

Moreover, as to the other categories of trade secrets, Defendant's argument is particularly well taken. Plaintiff's general identification of "proprietary technology, including AIMS" and "overall computer systems and software architecture associated with AIMS technology," and "information about product design and development" is far too vague to sufficiently identify the trade secrets at issue. *See IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002) ("a plaintiff must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition") (citing *Composite Marine Propellers, Inc. v. Van Der Woude,* 962 F.2d 1263, 1266 (7th Cir.1992)); *see also Von Holdt v. A-1 Tool Corp.*, 2005 WL 8180783, at *5–6 (N.D. Ill. June 1, 2005) (collecting cases addressing specificity necessary for identifying trade secrets in discovery). Again, Plaintiff needs to provide more information than it has provided in its vague discovery responses. Presumably, Plaintiff had more specific information that allowed it to file this lawsuit and Defendant is entitled to probe that in discovery.

Accordingly, the Court orders Plaintiff to supplement its responses to ROG 3 and 8, as well as RFP 24, to provide any additional information and documents in Plaintiff's possession, custody or control about Defendant's alleged disclosures to customers, including any knowledge Plaintiff has of "admissions" by Defendant, as well as regarding any discussions Plaintiff had with customers regarding Defendant's disclosures. In addition, the Court orders Plaintiff to supplement its responses to ROG 7 and ROG 9 (as well as RFP 24, to the extent Plaintiff has related documents in its possession, custody or control) to provide specific information identifying the alleged trade secrets, including with respect to "proprietary technology, including AIMS"; "overall computer systems and software architecture associated with AIMS technology"; "information about product design and development"; "pricing information"; and "information related to the specific vendor and supplier performance, as that information related to the reliability and efficiency of the components of [Plaintiff's] specific product."

6

## B. Defendant's Interrogatory No. 5 and Request for Production No. 2

Defendant's Interrogatory No. 5 ("ROG 5") and Request for Production No. 2 ("RFP 2") seek disclosure of the dates when certain employees (who left after October 1, 2021) resigned from Plaintiff, as well as production of correspondence in which these employees gave notice of their resignation. Motion [ECF No. 69] at 7. Defendant says Plaintiff only identified two employees in its interrogatory response, but subsequently identified 12 additional employees in a discovery letter. [*Id.*] Defendant also says Plaintiff only produced resignation correspondence for the two employees initially identified. [*Id.*] Plaintiff does not dispute it has not produced the additional resignation correspondence and asserts the exact resignation dates "seems immaterial" because these employees "had no significant management role." Response [ECF No. 2. Defendant argues the resignation dates are necessary to establish that many employees left Plaintiff close in time which resulted in Plaintiff's customers losing service and support for months.

The Court agrees this is discoverable information that is proportional to the needs of the case. Defendant should not have had to file a motion to compel production of this information. Accordingly, the Court orders Plaintiff to supplement its response to ROG 5 to identify the resignation dates for all identified employees who resigned after October 1, 2021, and further orders Plaintiff to produce the requested resignation correspondence for all identified employees in response to RFP 2.

## C. Defendant's Interrogatory No. 6 and Request for Production No. 23

Defendant's Interrogatory No. 6 ("ROG 6") and Request for Production No. 23 ("RFP 23") seek all facts supporting Plaintiff's allegation in Paragraph 42 of the Complaint that Defendant received an economic benefit from the alleged theft of trade secrets and stealing of customers, as well as documents supporting those

allegations. Plaintiff responded that Defendant took Plaintiff's customers and received commissions, and produced a list identifying contracts Plaintiff says went to Defendant's new employer. Motion [ECF No. 69] at 8. Plaintiff's responses also state it needs discovery from Defendant about commissions he earned from soliciting Plaintiff's customers. Pl. Supp. Interrog. Resp. [ECF No. 77-1]; Pl. Supp. RFP Resp. [ECF No. 70-11]. Defendant acknowledges that Plaintiff's response addresses its damages, but says Plaintiff fails to identify facts supporting the underlying claims of theft of trade secrets and solicitation of customers. Motion [ECF No. 69] at 8.

The Court disagrees with Defendant that these discovery requests require the disclosure of facts supporting Plaintiff's allegations about the theft of trade secrets or Defendant's solicitation of Plaintiff's customers. In the Court's view, this discovery sought information about the alleged economic benefit Defendant received from the trade secret theft and Plaintiff's responses provided responsive information. Moreover, Defendant's other discovery sought information about the underlying trade secret and customer solicitation claims (*see*, *supra*, discussing ROG 3, 7, 8, 9, and RFP 24), which the Court has separately addressed. Accordingly, the Court denies Defendant's Motion with respect to ROG 6 and RFP 23.

### D. Defendant's Request for Production Nos. 3 and 7

Defendant's Request for Production Nos. 3 and 7 ("RFP 3" and "RFP 7") seek production of documents related to the sale and acquisition of Plaintiff's predecessor entity, Frost Control, including "all documents" related to Frost Control's efforts to sell the business, and "all documents" Plaintiff received in due diligence including financial statements and documents reflecting Frost Control's performance. Motion [ECF No. 69] at 8-9. Defendant says evidence about Frost Control's financial insolvency is relevant to alternate causation for Plaintiff's customer attrition. [*Id.*] Plaintiff stands on objections, asserting these requests are "not likely to lead to the

discovery of any admissible evidence" because Plaintiff's claims relate to Defendant's conduct after the acquisition. Response [ECF No. 77] at 2.

With respect to Plaintiff's objection, Defendant is correct the 2015 amendments to Rule 26(b)(1) removed "'the notion that information is discoverable, even if not directly relevant, if it is reasonably calculated to lead to the discovery of admissible evidence.'" *Santiago v. City of Chicago*, 2023 WL 5096288, at *1 (N.D. Ill. Aug. 9, 2023) (quoting *Ye v. Cliff Veissman, Inc.*, No. 14-CV-01531, 2016 WL 950948, at *2 (N.D. Ill. Mar. 7, 2016)); *see also Barnes-Staples v. Murphy*, No. 20-CV-3627, 2021 WL 1426875, at *3 n.1 (N.D. Ill. Apr. 15, 2021). Nevertheless, in the Court's view, these documents relate to an area of discovery that is tangential to the claims and defenses in the case. Defendant speculates that if Frost Control provided Plaintiff with information about customer attrition before the acquisition, that may show Plaintiff's lost customers were "inevitable" and asserts customer attrition at Frost Control may have been accounted for in the purchase price, but any relationship between the purchase price and the issues in this theft of trade secrets case is at best murky and speculative. Accordingly, Defendant's requests for "all documents" related to Plaintiff's acquisition of Frost Control's business and "all documents" received in due diligence are overbroad and not proportional to the needs of the case. For these reasons, the Court denies Defendant's Motion as to RFP 3 and RFP 7.

### E. Defendant's Request for Production No. 8

Defendant's Request for Production No. 8 ("RFP 8") seeks production of missing attachments to emails containing customer complaints related to Plaintiff's business that Plaintiff previously produced. Motion [ECF No. 69] at 9-10. Plaintiff says it "produced all information it has related to the customer complaints" and claims it "made significant efforts to search all databases" but does not specifically address whether it has the email attachments. Response [ECF No. 77] at 2.

The Court agrees that to the extent Plaintiff has in its possession, custody or control any attachments referenced in the emails Plaintiff previously produced, it must produce the attachments. Accordingly, the Court grants Defendant's Motion as to RFP 8.

### F. Defendant's Request for Production No. 11

Defendant's Request for Production No 11 ("RFP 11") seeks production of Plaintiff's correspondence with any customers that Plaintiff relies on for damages from January 1, 2020 to the present. Motion [ECF No. 69] at 10. Defendant notes Plaintiff did not object, but it only produced a spreadsheet about damages and did not produce any correspondence with customers. [*Id.*]; *see also* Pl. Supp. RFP Resp. [ECF No. 70-11]. Although Plaintiff refers in passing to RFP 11, Plaintiff does not address Defendant's request for customer communications. Response [ECF No. 77] at 2.

Defendant's request for Plaintiff's correspondence with customers relevant to its damages claims is discoverable. Plaintiff did not raise any objection to this request, including as to timeframe or scope. In the absence of any such arguments, the Court in its discretion declines to speculate about whether responding to RFP 11 would be unduly burdensome or not proportional to the needs of the case. Accordingly, the Court grants Defendant's Motion as to RFP 11.

### G. Defendant's Request for Production Nos. 22 and 19

Defendant's Request for Production No. 22 ("RFP 22") seeks production of "all documents" reflecting Plaintiff's reasonable measures to safeguard its trade secrets. Motion [ECF No. 69] at 10. Defendant's Request for Production No. 19 ("RFP 19") seeks production of Plaintiff's compensation agreements and commission plans applicable to Defendant. [*Id.*] Plaintiff says it has produced all responsive documents in its possession. Response [ECF No. 77] at 2-3. Defendant clarified that he no longer

seeks any relief from the Court as to RFP 22 or RFP 19. Reply [ECF No. 78] at 5. Accordingly, Defendant's Motion as to RFP 22 and RFP 19 is denied as moot.

### H. Defendant's Request for Production No. 25

Defendant's Request for Production No. 25 ("RFP 25") seeks "[f]or the time period of March 1, 2022 to the present" production of "all documents and correspondence, including internal correspondence, that regard Moore, TAPCO, or the Litigation." Motion [ECF No. 69] at 11. Plaintiff objected that RFP 25 sought proprietary and confidential information. [*Id.*]; *see also* Pl. Supp. RFP Resp. [ECF No. 70-11]. Plaintiff now says production of such documents "undoubtably would invade the attorney-client privilege." Response [ECF No. 77] at 3. Defendant notes Plaintiff did not previously raise a privilege objection, disputes that all responsive documents are privileged, and requests a privilege log. Reply [ECF No. 78] at 5.

The Court agrees Plaintiff should provide a privilege log identifying any documents responsive to RFP 25 as to which it asserts a privilege. *See* FED.R.CIV.P. 26(b)(5)(A). In the Court's view, however, it is reasonably plausible that documents regarding Defendant, his current employer, or this litigation from the time period after the initial Complaint was filed on December 8, 2022 [ECF No. 1] are likely to be attorney client privileged or protected work product. Accordingly, the Court orders Plaintiff to produce any non-privileged responsive documents from March 1, 2022 to the present, and to produce a privilege log in compliance with Rule 26(b)(5)(A) for any responsive documents Plaintiff contends are privileged for the time period from March 1, 2022 through December 8, 2022, before this lawsuit was filed.

### I. Defendant's Request for An Award of Reasonable Fees and Expenses

Finally, Defendant requests an award of his fees and expenses in bringing this Motion. Motion [ECF No. 69] at 12. Pursuant to Federal Rule of Civil Procedure

37(a)(5)(C), a court has discretion to apportion fees where a motion to compel is granted in part and denied in part, as is the case here. FED. R. CIV. P. 37(a)(5)(C); *Alicea v. Cnty. of Cook*, 88 F.4th 1209, 1219 (7th Cir. 2023) ("Rule 37(a)(5)(C) provides that if a motion to compel is partially granted, the district court has discretion to, 'after giving an opportunity to be heard, apportion the reasonable expenses for the motion.'"). In determining the proper apportionment of expenses, or whether to apportion expenses at all, "the court will look to the relative degree of success of the party seeking fees." *Belcastro v. United Airlines, Inc.*, 2020 WL 1248343, at *4 (N.D. Ill. Mar. 15, 2020) (internal citation omitted).

The Court granted Defendant's Motion with respect to his request for discovery seeking identification of Plaintiff's trade secrets and related to Defendant's disclosure of such trade secrets, as well as regarding other requests related to employee resignations and missing attachments to emails. The Court also ordered Plaintiff to produce non-privileged documents related to Defendant and this litigation, as well as to provide a privilege log, although for a shorter timeframe than Defendant had requested. The Court denied Defendant's Motion with respect to other requests, including an overbroad request for all documents related to the Plaintiff's acquisition of a predecessor entity, as well as several requests where Plaintiff clarified it had no additional responsive documents.

Under these circumstances, the Court, may in its discretion, award fees under Rule 37(a)(5)(C). If Defendant intends to seek those fees, then it should file by August 19, 2024 a petition that includes an itemization of the attorney's fees and expenses it incurred in bringing Defendant's Motion, the names and experience level of the attorneys or paralegals who worked on Defendant's Motion and Reply, their hourly rates and the amount of time spent on each billed task, and a description of the work performed that does not reveal attorney client privileged information. If Defendant files a petition in line with this Order, then Plaintiff shall respond to Defendant's petition by September 6, 2024. Defendant shall reply by September 20, 2024. The

Court will consider awarding fees and expenses pursuant to Rule 37(a)(5)(C) against Plaintiff, its counsel, or both, and the parties should address that issue in their respective filings. The Court will rule via CM/ECF or set the matter for an in-court hearing and ruling.

*****

For all these reasons, Defendant's Motion to Compel [ECF No. 68] is granted in part and denied in part. The Court orders Plaintiff to supplement its responses to Defendant's ROG 3, 7, 8 and 9, as well as RFP 24, as set forth in this Order; to supplement its response to ROG 5 to identify the resignation dates for the identified employees; to produce resignation correspondence for the identified employees in response to RFP 2; to produce any attachments to emails Plaintiff previously produced in response to RFP 8 that are in Plaintiff's possession, custody or control; to produce Plaintiff's correspondence with any customers that Plaintiff relies on for damages from January 1, 2020 to the present in response to RFP 11; and to produce any non-privileged documents from March 1, 2022 to the present responsive to RFP 25. The Court further orders Plaintiff to produce a privilege log in compliance with Rule 26(b)(5)(A) for any documents responsive to RFP 25 for the time period from March 1, 2022 through December 8, 2022 that Plaintiff contends are privileged. The Court denies Defendant's Motion to Compel with respect to ROG 6 and RFP 23, and denies as moot Defendant's Motion with respect to RFP 19 and RFP 22.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: July 30, 2024