IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FROST SOLUTIONS, LLC, | CASE NO.: 1:22-CV-06910 |
| Plaintiff, | Hon. J. Martha M. Pacold |
| vs. | Hon. Mag. J. Jeffrey T. Gilbert |
| CORY MOORE and TRAFFIC AND PARKING CONTROL CO. INC., | Jury Demanded |
| Defendants. | |

**DEFENDANT CORY MOORE'S BRIEF IN SUPPORT OF HIS MOTION TO COMPEL COMPLIANCE WITH COURT ORDER AND FOR SANCTIONS**

## I.   INTRODUCTION

Frost continues to disregard its discovery obligations. Even more egregious, Frost has not complied with the Court's order granting Moore's motion to compel, which required that Frost make a rolling production that needed to be complete no later than August 27, 2024. Moore has attempted at length to attain the documents and information he has timely requested, including countless meet and confer efforts and motion practice, as well as pursuit of a pending fees Petition. Yet Frost still has not prioritized Moore's discovery requests and often does not bother to respond at all — to counsel, by its own unilaterally extended deadlines, or by deadlines under the Federal Rules. At this point, sanctions are appropriate, including but not limited to a further award of attorney's fees and costs to Moore.

## II.   RELEVANT FACTS

### a.   Frost's Search Efforts to Locate Documents Ordered for Production by the Court were not Conducted in Good Faith

#### i.   Frost Delays in Providing Search Terms

On July 30, 2024, this Court granted in part Moore's motion to compel and later ordered Frost to complete its production by August 27, 2024. (*See* Dkt. 84, 93.) At the status hearing

following the decision, Moore's counsel suggested Frost disclose search terms and custodians to ensure completeness of the compelled production. (October 17, 2024 Declaration of Maria L. Kreiter ("Kreiter Decl."), ¶ 2.) The Court agreed doing so would be a good idea and suggested the parties discuss those particulars amongst themselves. (*Id*.) On August 15, Moore's counsel reiterated the request to exchange search terms and date parameters. (*Id*. at ¶ 3, Exhibit A.)

By August 29, Frost still had not responded to Moore's e-mail request and so Moore's counsel raised the request again by phone and thereafter memorialized the parties' oral agreement that Frost would provide the search parameters requested by September 3. (*Id*. at ¶ 4, Exhibit B.) However, September 3 came and went without Frost's disclosure of search parameters or request for an extension or any communication whatsoever. (*Id*. at ¶ 5.) As a result, Moore's counsel followed up the next day and requested Frost provide the search parameters that morning. Frost's counsel said he would take care of it that day. (*Id*. at ¶ 6, Exhibit C.)

However, Frost once again missed its own deadline. (*Id*. at ¶ 7) Then Frost said it would respond by the end of the week, September 5. (*Id*., Exhibit C.) That date also came and went with no disclosure by Frost. (*Id*.) On September 6, Moore's counsel sent Frost's counsel a formal meet and confer letter outlining Frost's continuing discovery deficiencies, including Frost's failure to disclose its search terms and custodians. (*Id*. at ¶ 8, Exhibit D.) The letter requested any objections to be raised by September 13 and the deficiencies to be cured by September 20. (*Id*. Exhibit D.) Frost did not thereafter provide its search parameters until September 9, when Moore proposed making the Court aware of the failure to disclose in the parties' joint status report. (*Id*. at ¶ 9.) It was at this point – just over a month before close of discovery – that Moore learned of Frost's terribly deficient search parameters. (*Id*.)

## ii. Frost Provides Deficient Search Parameters

Frost ultimately provided the following information regarding its search parameters on September 9, 2024:

| From: | Morrell, Benjamin S. |
|---|---|
| To: | Kreiter, Maria |
| Cc: | Amir Tahmassebi; Carrino, Christie; Correa McMichen, Theresa; Moore, Machaella; Rowden, Todd; Oakley, James; Yoon, Yeoeun Claire |
| Subject: | RE: Moore depositions [GK-ACTIVE.FID3283275] |
| Date: | Monday, September 9, 2024 1:43:03 PM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |

[EXTERNAL] This message originated from outside your domain.

Here are details on search terms and custodians.
Custodians: Frost employees Michael Fallon and Emily Cooper
Search terms:
- Search 1: cory, corey, resignation, quit, quitting, leaving, canceling, cancelling, moore, cmoore, tapco, moore1cw@gmail.com, resign, resignation
- Search 2: individuals from the March 6, 2024 + separat* OR resign* OR terminat*
  - Date limiter: on or after 10/1/2021
  - "individuals from the March 6, 2024" means one of:
    - Kristin w/3 Geldhoff OR James w/3 Anderson OR Jim w/3 Anderson OR Mario w/3 Bonardi OR Sai w/3 Krishna Prabhala OR Tasha w/3 Weidler OR Scott w/3 Banks OR Cory w/3 Moore OR Ryan w/3 Dowling OR Shannon w/3 Thomas OR Victor w/3 Gill OR John w/3 Miller OR Kyle w/3 Lovejoy
- Search 3: customers on the damage list + Customer* OR Contact* OR Deal* OR Contract* OR Prospect*
  - "customers on the damage list" means one of:
    - Tapco OR "Larimer County, Co" OR "Washington County, MN" OR "St. Paul, MN" OR "Dublin, OH" OR "Concord, MA" OR "Montcalm, MI" OR "Cheyenne, WY" OR "Lebanon, NH" OR "Delaware County, OH" OR Winnipeg OR Kenosha OR "Redmond, OR" OR "Framingham, MA" OR "Pierce County, WA" OR "Fargo, ND" OR "Reno, NV" OR "St. Johns, CA" OR "Logan, UT" OR "Kent County, MI" OR "East Bridgewater, MA" OR LBJ OR "Evanston, IL" OR "Mount Pleasant, MI" OR Kalamazoo OR Portage OR "Grandville, MI" OR "Walker, MI" OR "Wyoming, MI" OR "East Grand Rapids" OR Kentwood OR "Kent County" OR "Muskegon County, MI" OR "Ottawa County, MI" OR "Leahy Landscaping" OR LBJ OR "Champaigne County" OR "Delaware DOT"
  - Date limiter: none
  - Searches limited to documents produced by Frost to Defendants in *Frost v. Baglien* litigation
Emily Cooper also performed a manual search for all emails sent by Frost employees during March 2021.

(*Id*. at ¶ 10.) The search parameters are so lacking that it is impossible to think Frost acted in good faith. For example:

- Searches regarding customers upon which Frost seeks damages were run only over a

set of documents produced in a third-party lawsuit in New Hampshire (the above-referenced *Frost v. Baglien* suit). Frost later admitted this was in error and should be rerun.

- Other searches were run ***over only two custodians***, neither of whom are the key Frost witnesses known throughout the case, including witnesses scheduled for depositions and one witness Frost designated as its corporate representative. It cannot be that Frost was unaware of these key witnesses or thought only two witnesses were in play. Moreover, the two custodians searched include an IT professional who would be unlikely to have any personal knowledge of any of the facts as issue.

- Search terms used for the customers at issue were incredibly narrow such that documents clearly in the scope of the request would not have been picked up by the search (i.e. one of Frost's search terms was "Larimer County, Co" instead of "Larimer").

- Search terms used for the employees who had resigned were too narrow in that they were limited to certain employees.

(*Id.* at ¶ 11.)

These glaringly deficient search terms have a direct impact on the following document requests to which the Court already ordered Frost to produce responsive documents and has a pending fees petition by Moore:

- <u>RFP 25</u>: (production of documents and correspondence regarding Moore, TAPCO or the Litigation) (DKT 84 at 11)

Search one would yield responsive documents; however, that it was only run over two custodians at Frost who would be unlikely to have information about Moore, TAPCO or the litigation is insufficient.

- <u>RFP 2</u> (production of documents relating to employee resignations) (DKT. 84 at 7.)

Search two would yield responsive documents; however, that it was only run over two custodians at Frost who would be unlikely to have resignation information, and that it limited potentially responsive documents to particular individuals is insufficient. Indeed, Frost later noted that omitting the list of individuals from the search resulted in 2,049 email hits. (*Id.* at ¶ 12, <u>Exhibit F</u>.)

- RFP 8 (production of complete documents relating to customer complaints); RFP 11 (production of correspondence with any customers at issue in the litigation); RFP 23 (production of documents supporting allegations of solicitation of customers); (DKT 84 at 7-10.)

Search three would yield responsive documents to these requests, but that the universe of documents searched was limited to documents produced in a different litigation and the customer-related search terms were too narrow, is insufficient. Indeed, Frost later noted that thousands of documents were located when broadening the search. (*Id.*, Exhibits E and G.)

### iii. Further Meet and Confer Leads to Identification of Additional Structural Issues with Frost's Searches and Delay

On September 19, 2024, after hearing nothing from Frost regarding Moore's September 6 meet and confer letter, Moore's counsel followed up with Frost's counsel to ensure Frost would be supplementing its production in full by the September 20 deadline indicated in the letter. (*Id.* at ¶ 13.) Instead, Frost provided only a response letter on September 20; it did not make a supplemental production. (*Id.*) Moore also notified Frost that the search parameters were deficient on September 9 (the day they were provided) and again on September 20 (*Id.* at ¶ 14.)

After rescheduling twice due to Frost counsel's unavailability, and without anything further from Frost regarding its deficient search terms or a supplemental production, counsel for parties engaged in a meet and confer call on October 3, 2024. (*Id.* ¶ 15.) On the call, counsel acknowledged that its search process was deficient and committed to promptly addressing Moore's concerns, including by supplementing certain discovery responses and document productions within the week. (*Id.*) Moore's counsel memorialized each item in an email to Frost's counsel, along with expectations relating to timing with regard to rerunning search terms and identifying custodians. (*Id.* at ¶ 16, Exhibit H.)

While Frost complied with some action items, it continued to delay in producing responsive documents, the first set of which were due on October 10. (*Id.* at ¶ 17, *see* Exhibit

H.) On the deadline Frost's counsel reported that it needed to undertake a manual Bates labeling process that would not be completed by the deadline but would be provided "in short order." (*Id*. at ¶ 18). Then after hours on Friday, October 11, Frost's counsel seemed to change course, stating for the first time that the document data for this case needed to be migrated from one document hosting space to another in order to be merged with another set of data in the case. He further stated that the migration and merger would be completed by the middle of the subsequent week, but did not provide a date for production. (*Id*.).

Moore's counsel followed up on the morning of Tuesday October 15, asking for clarification on what the migration process entailed and expressing dissatisfaction that only now, after two months of working on resolving the discovery deficiencies that the Court had compelled Frost to complete by August 27, was Frost initiating this migration. (*Id*. at ¶ 19, Exhibit I.) Moore's counsel further made clear that Frost was in violation of the Court's discovery order, that the continued delays were due to Frost's deficient discovery planning and were prejudicial, unacceptable and avoidable, and that Frost must produce the initial set of documents no later than close of business on October 17. (*Id*.) Frost did not make a production. (*Id*.)

Moore's counsel also followed up on other action items Frost had undertaken, but that remained deficient. For example, while Frost finally provided a privilege log, it only contained communications from 2024 – Moore requested that Frost confirm by the end of the day that it had not located or reviewed privileged documents prior to 2024. (*Id*., *see* Exhibit I.) Frost did not respond. (*Id*.) Moore also identified the custodians that should be searched and further refined the customer-related search terms for Frost. Frost has not confirmed that it will run additional searches according to those parameters. (*Id*.) At this time, discovery was to

close October 15, 2024 and Frost's deficiencies remain glaring, with Moore having no faith that Frost will cure those deficiencies without Court intervention and sanctions.

### b. Frost's Subsequent Discovery Responses are Deficient or Nonexistent.

Separate from issues related to the documents and information Frost was ordered to produce, during the course of discovery, Moore issued two additional sets of written discovery on Frost. The Second Set, which contained document requests, interrogatories, and requests for admission was due on October 4, 2024. (*Id*. at ¶ 22) The Third Set, which contained interrogatories and requests for production was due on October 14, 2024. (*Id*.)

While Frost timely responded to the Second Set, its response was deficient and violative of the rules. Frost's responses included interrogatory responses that purported to incorporate documents under Rule 33(d), but did not actually identify the documents at issue, which is violative of the Rule. (*Id*. at ¶ 23.) Additionally, while Frost's responses to the requests for production state that it will produce responsive, non-privileged documents, Frost has not produced any documents. (*Id*. at ¶ 24.)

With regard to the Third Set, Frost did not timely respond, and has still not responded. (*Id*. at ¶ 25.) Instead, on the October 14, 2024 deadline, after hours at 7:17 p.m., Frost's counsel emailed the responses would be forthcoming the next day. (*Id*.) Several days have now passed and Frost has not served its written responses, sought an extension, produced any responsive documents, or further communicated to Moore on the issue. (*Id*.)

### III.    ARGUMENT

Federal Rule of Civil Procedure 37(b)(2)(A) provides that a court may issue further orders for a party's failure to obey an order to provide discovery, including an order under Rule 37(a), which governs orders on motions to compel. *See* Fed. R. Civ. P. 37(b)(2)(A). Such orders

include those "(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence . . . (iii) striking pleading in whole or in part . . . (v) dismissing the action or proceeding in whole or in party . . . (vi) rendering a default judgment against the disobedient party . . . or (vii) treating as contempt of court the failure to obey [the] order." *Id.*

To establish contempt, the moving party must establish that "(1) there exists a clear court order; (2) the alleged contemnor violated that order; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *Fox v. Manhattan Mech. Servs. LLC*, No. 19 CV 238, 2021 WL 3603623, at *3 (N.D. Ill. Aug. 13, 2021). The opposing party must then show by clear and convincing evidence that it "took every reasonable step to comply and to explain why compliance [is] not possible." *Id.*

"Civil contempt sanctions are designed for the dual purpose of compelling compliance with a court order and compensating the complainant for losses caused by contemptuous actions. *Id.* (quoting *Autotech Techs. LP v. Integral Rsch. & Dev. Corp.*, 499 F.3d 737, 752 (7th Cir. 2007)). Courts have broad discretion to fashion contempt remedies. *See Fox*, 2021 WL 3603623, at *3.

Frost's discovery behavior warrants sanctions. At minimum, Frost should be held in contempt and forced to pay monetary sanctions to Moore, at least in the amount of attorneys' fees expended on this discovery dispute following the Court's July 30, 2024 Order on Moore's Motion to Compel, if not additional monetary sanctions to ensure Frost understands the severity of its noncompliance and actually complies with the Court's order.

Indeed, Frost's behavior meets all elements of civil contempt:

(1) **The Court issued a clear order**. The Court's July 30 Order clearly compelled Frost to produce documents responsive to Requests for Production 2, 8, 11, 23 and 25 (Dkt. 84) and its August 6 Order made clear that production should be complete by August 27 (Dkt. 93).

(2) **Frost is in violation of that Order**. By failing to conduct reasonable searches that would result in the identification of responsive documents, Frost has failed to produce documents it was ordered to produce, and has not rectified its failure despite impending close of discovery and despite the passage of almost two months since production was required. Further, failing to ensure that it had the proper discovery procedures in place to search documents, such as ensuring that all data was on the same document hosting space, until nearly two months following the deadline to produce has also contributed to the failure to produce. And finally, Frost's delay in responding to Moore's counsel throughout this two-month period, such that Moore has had to follow up with Frost's counsel on multiple occasions and wait days on end for simple responses to questions, has also contributed to the failure to produce.

(3) **Frost's violations are significant**. By their own admission their insufficient search terms missed thousands of documents that were responsive to Moore's requests and should have been produced, if not in the normal course, then certainly after the Court's July 30 Order. This is in stark contrast to the 132 files Frost produced following the Court's Order.

Moreover, the documents are integral to Moore's (and TAPCO's[1]) defenses because they include communications discussing Moore and TAPCO and documents pertaining to the customers that Frost alleges Moore and TAPCO interfered with. Without these documents Moore is prejudiced from understanding the extent of the communications Frost had with the

---

[1] TAPCO was added as a defendant on October 7, 2024.

customers, Moore's or TAPCO's alleged solicitation or interference. Frost's failures are especially significant in that they have been ongoing throughout discovery and continue even with the discovery deadline approaching. As Plaintiff, Frost should be ready and prepared to litigate its case, but it's utter lack of discovery planning shows that is not the case and has come at the expense to Moore, and now TAPCO.

(4) **Frost has not exercised diligence**. None of Frost's efforts show it was diligent in producing documents pursuant to the Court's order. Among other things, Frost did not (i) timely disclose search terms, (ii) meet and confer on the search terms and other items of deficiency Moore identified, (iii) ensure that their initial search parameters were properly tailored to this case – i.e. choose reasonable custodians and run searches over all documents, not just those produced in a different litigation, or (iv) manage data such that it was hosted in the same location and could be easily searched and accessed. Such conduct is, objectively neither reasonable nor diligent, but instead is consistent with Frost's dilatory discovery conduct that resulted in the Order compelling production in the first place.

Such contemptuous conduct must be stopped. Moore should not have to bear the time and cost of Frost's failure to comply with the Order. As sanctions for Frost's misconduct, Moore respectfully requests the Court (1) hold Frost in contempt; (2) order Frost to produce all responsive documents immediately; (3) assess against Frost Moore's expenses and attorneys' fees incurred with his attempts to obtain compliance with the Order and in bringing, briefing, and arguing this motion;[2] (4) imposing an additional monetary sanction against Frost that deters further discovery abuses and ensures compliance; (5) order a Rule

---

[2] If this relief is granted, Moore will file a supporting fee petition detailing the amounts of fees and costs incurred.

30(b)(6) deposition of Frost specific to the issue of the completeness of its supplemental document production (once the production is complete) and require Frost to advance the attorney's fees Moore will incur to prepare for and take that deposition; and (6) for further sanctions under Rule 37(b)(2)(A) that the Court deems just and reasonable.

Further, the Court should order Frost to fully respond to Moore's second and third sets of discovery and to produce all responsive documents. Any interrogatories answered by reference to documents should include Bates-number of the document Frost incorporates. With respect to the third set of discovery, Frost never responded and so it has waived any objection. The Court should order Frost's production of all responsive documents immediately, without permitting objection.

Dated this 17th day of October, 2024.

By: */s/ Maria L. Kreiter*

Maria L. Kreiter, *admitted pro hac vice*
Christie B. Carrino, *admitted pro hac vice*
Theresa M. Correa McMichen, *admitted pro hac vice*
GODFREY & KAHN, S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5615
414-273-3500
mkreiter@gklaw.com
ccarrino@gklaw.com
tcorreamcmichen@gklaw.com

Erik J. Ives
FOX SWIBEL LEVIN & CARROLL LLP
200 W. Madison Street, Suite 3000
Chicago, IL 60606
312-224-1200
eives@foxswibel.com

*Attorneys for Defendant Cory Moore and Traffic and Parking Control Co., Inc.*

11

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned attorney hereby certifies that, on October 17, 2024, she caused the

foregoing document to be electronically filed with the Clerk of the United States District Court

for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which

is also served upon counsel for all parties of record.

*/s/ Maria L. Kreiter*
Maria L. Kreiter

31948635.3