IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FROST SOLUTIONS, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> CORY MOORE and TRAFFIC AND PARKING CONTROL CO. INC., <br><br> Defendants. | CASE NO.: 1:22-CV-06910 <br><br> Hon. J. Martha M. Pacold <br><br> Hon. Mag. J. Jeffrey T. Gilbert <br><br> Jury Demanded |

**DECLARATION OF MARIA L. KREITER IN SUPPORT OF DEFENDANT CORY MOORE'S MOTION TO COMPEL COMPLIANCE WITH COURT ORDER AND FOR SANCTIONS**

Maria L. Kreiter, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am lead defense counsel for Defendants Cory Moore ("Moore") and Traffic Parking Control Co. Inc. ("TAPCO"). I make this Declaration in Support of Moore's Motion to Compel Compliance with Court Order and for Sanctions.

**Frost's Delays in Providing Search Terms**

2. On August 6, 2024, at the status hearing following the Court's decision on Moore's prior Motion to Compel (and decision to deny Frost's Motion to Compel), I suggested that parties exchange search terms and custodians to ensure completeness of the compelled production. The Court agreed doing so would be a good idea and suggested the parties discuss those particulars amongst themselves.

3. On August 15, I reiterated the request to exchange search terms and date parameters, as reflected in the email attached as Exhibit A.

4. On August 29, Frost still had not responded to my e-mail request and so I raised the request again by phone and thereafter memorialized the parties' oral agreement that Frost

would provide the search parameters requested by September 3, 2024 in the email attached as Exhibit B.

5. September 3 came and went without Frost's disclosure of search parameters or a request for an extension or any communication whatsoever.

6. As a result, I followed up the next day by way of the email attached as Exhibit C and requested that Frost provide the search parameters that morning. Frost's counsel responded, as shown in Exhibit C, that he would take care of it that day.

7. However, Frost once again missed its own deadline. Then, as shown in Exhibit C, Frost said it would respond by the end of the week, September 5. That date also came and went with no disclosure by Frost.

8. On September 6, my colleague, Christie Carrino, sent Frost's counsel the meet and confer letter attached as Exhibit D, which outlines Frost's continuing discovery deficiencies, including Frost's failure to disclose its search terms and custodians. The letter requested that any objections be raised by September 13 and the deficiencies to be cured by September 20.

9. Frost thereafter did not provide its search parameters until September 9, when Moore proposed making the Court aware of the failure to disclose in the parties' joint status report. It was at this point, just over a month before close of discovery, that Moore learned of Frost's terribly deficient search parameters.

**Frost Provides Deficient Search Parameters**

10. Frost ultimately provided the following information regarding its search parameters on September 9, 2024:

> From: Morrell, Benjamin S.
> To: Kreiter, Maria
> Cc: Amir Tahmassebi; Carrino, Christie; Correa McMichen, Theresa; Moore, Machaella; Rowden, Todd; Oakley, James; Yoon, Yeoeun Claire
> Subject: RE: Moore depositions [GK-ACTIVE.FID3283275]
> Date: Monday, September 9, 2024 1:43:03 PM
> Attachments: image001.png
> image002.png
> image003.png
> image004.png
> image005.png
>
> [EXTERNAL] This message originated from outside your domain.
>
> Here are details on search terms and custodians.
> Custodians: Frost employees Michael Fallon and Emily Cooper
> Search terms:
> - Search 1: cory, corey, resignation, quit, quitting, leaving, canceling, cancelling, moore, cmoore, tapco, moore1cw@gmail.com, resign, resignation
> - Search 2: individuals from the March 6, 2024 + separat* OR resign* OR terminat*
>   - Date limiter: on or after 10/1/2021
>   - "individuals from the March 6, 2024" means one of:
>     - Kristin w/3 Geldhoff OR James w/3 Anderson OR Jim w/3 Anderson OR Mario w/3 Bonardi OR Sai w/3 Krishna Prabhala OR Tasha w/3 Weidler OR Scott w/3 Banks OR Cory w/3 Moore OR Ryan w/3 Dowling OR Shannon w/3 Thomas OR Victor w/3 Gill OR John w/3 Miller OR Kyle w/3 Lovejoy
> - Search 3: customers on the damage list + Customer* OR Contact* OR Deal* OR Contract* OR Prospect*
>   - "customers on the damage list" means one of:
>     - Tapco OR "Larimer County, Co" OR "Washington County, MN" OR "St. Paul, MN" OR "Dublin, OH" OR "Concord, MA" OR "Montcalm, MI" OR "Cheyenne, WY" OR "Lebanon, NH" OR "Delaware County, OH" OR Winnipeg OR Kenosha OR "Redmond, OR" OR "Framingham, MA" OR "Pierce County, WA" OR "Fargo, ND" OR "Reno, NV" OR "St. Johns, CA" OR "Logan, UT" OR "Kent County, MI" OR "East Bridgewater, MA" OR LBJ OR "Evanston, IL" OR "Mount Pleasant, MI" OR Kalamazoo OR Portage OR "Grandville, MI" OR "Walker, MI" OR "Wyoming, MI" OR "East Grand Rapids" OR Kentwood OR "Kent County" OR "Muskegon County, MI" OR "Ottawa County, MI" OR "Leahy Landscaping" OR LBJ OR "Champaigne County" OR "Delaware DOT"
>   - Date limiter: none
>   - Searches limited to documents produced by Frost to Defendants in *Frost v. Baglien* litigation
> Emily Cooper also performed a manual search for all emails sent by Frost employees during March 2021.

11. Frost's search parameters are so lacking that it is impossible to think Frost acted in good faith:

- Searches regarding customers upon which Frost seeks damages were run only over a set of documents produced in a third-party lawsuit in New Hampshire (the above-referenced *Frost v. Baglien* suit). Frost later admitted this was in error and should be rerun.

- Other searches were run ***over only two custodians***, neither of whom are the key Frost witnesses known throughout the case, including witnesses scheduled for depositions and one witness Frost designated as its corporate representative. It cannot be that Frost was unaware of these key witnesses or thought only two witnesses were in play. Moreover, the two custodians searched include an IT professional who would be unlikely to have any personal knowledge of any of the facts as issue.

3

- Search terms used for the customers at issue were incredibly narrow such that documents clearly in the scope of the request would not have been picked up by the search (i.e. one of Frost's search terms was "Larimer County, Co" instead of "Larimer").
- Search terms used for the employees who had resigned were too narrow in that they were limited to certain employees.

12. It was confirmed just how deficient Frost's original searches were when on October 4, 2024 Frost's counsel informed us via email that after revising the search to Moore's suggested terms thousands of additional documents were located. The October 4, 2024 e-mail from Frost's counsel, Benjamin Morrell, is attached as <u>Exhibit E</u>; Mr. Morrell's October 11, 2024 email is attached as <u>Exhibit F</u>; and the hit report on customer-related search terms that Frost provided is attached as <u>Exhibit G</u>.

### **Further Meet and Confer Leads to Identification of Additional Structural Issues with Frost's Searches and Delay**

13. On September 19, 2024, after hearing nothing from Frost regarding Moore's September 6 meet and confer letter, I followed up with Frost's counsel via email to ensure Frost would be supplementing its production in full by the September 20 deadline indicated in the letter. Instead, Frost provided only a response letter on September 20; it did not make a supplemental production.

14. On September 9, Ms. Carrino had made Frost aware that the search parameters were deficient which I again emphasized to Frost on September 20.

15. After being rescheduled twice, parties engaged in a meet and confer on October 3. Ms. Carrino and I were present on behalf of Moore, and Mr. Oakley, Mr. Morrell, and Ms. Yoon were present on behalf of Frost. Counsel for Frost acknowledged that its search process was deficient and committed to promptly addressing Moore's concerns within the week.

16. Ms. Carrino memorialized each item in an email to Frost's counsel, along with expectations relating to timing with regard to rerunning search terms and identifying custodians. A true and correct copy October 4 email exchange is attached as Exhibit H.

17. Frost complied with some action items, but it continued to delay in producing responsive documents. The first set of documents were due on October 10. *See* Exhibit H.

18. On the October 10 deadline, Frost's counsel stated that it needed to undertake a manual Bates labeling process that would not be completed by the deadline but would be provided "in short order." However, after hours on Friday, October 11, Frost's counsel changed course and stated for the first time that the document data for this case needed to be migrated from one document hosting space to another in order to be merged with another set of data in the case. Frost's counsel stated that the migration would be completed by the middle of the following week but did not provide a date for production.

19. Ms. Carrino followed up on Tuesday October 15 asking for clarification on the migration process and expressing dissatisfaction that only now, after months of working on resolving the discovery deficiencies, was Frost initiating this migration. Additionally, Ms. Carrino made clear that Frost was in violation of the Court's discovery order and that Frost must produce the initial set of documents no later than October 17. However, Frost did not make a production. A true and correct copy of Ms. Carrino's October 15 email is attached as Exhibit I.

20. Ms. Carrino also followed up on other action items Frost had undertaken but that remained deficient. For example, Frost's privilege log only contained communications from 2024, which Ms. Carrino requested Frost confirm by end of the day that it had not located privileged documents prior to 2024. However, Frost did not respond. *See* Exhibit I.

5

21. In her email, Ms. Carrino also identified the custodians that should be searched and further refined the customer-related search terms for Frost. Frost has not confirmed that it will run additional searches according to those parameters outlined. *See Id*.

22. Moore issued two additional sets of written discovery on Frost. The Second Set was due on October 4 and the Third Set was due on October 14.

23. Frost timely responded to the Second Set. However, the response was deficient and violative of the rules. Frost's responses included interrogatory responses that purported to incorporate documents under Rule 33(d) but did not actually identify the documents at issue.

24. Additionally, while Frost's responses to the requests for production state that it will produce responsive, non-privileged documents, Frost has not produced any documents.

25. Regarding the Third Set, Frost did not timely respond and still has not responded. Instead, on the October 14, 2024 deadline, after hours at 7:17 p.m., Frost's counsel emailed that the responses would be forthcoming the next day. Several days have now passed and Frost has not served its written responses, sought an extension, produced any responsive documents, or further communicated to Moore on the issue.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

Dated this 17th day of October, 2024.   By: */s/ Maria L. Kreiter*
                                             Maria L. Kreiter

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that, on October 17, 2024, she caused the foregoing document to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which is also served upon counsel for all parties of record.

*/s/ Maria L. Kreiter*
Maria L. Kreiter

31964922.1