# EXHIBIT D



833 EAST MICHIGAN STREET• SUITE 1800
MILWAUKEE, WISCONSIN 53202-5615

TEL•414.273.3500   FAX•414.273.5198

WWW•GKLAW.COM

Direct: 414-287-9341
ccarrino@gklaw.com

September 6, 2024

**VIA EMAIL**

| | |
|---|---|
| Amir R. Tahmassebi | James Oakley |
| Konicek & Dillon P.C. | Todd Rowden |
| 70 W. Madison Street, Suite 2060 | Benjamin S. Morrell |
| Chicago, IL 60602 | Taft Stettinius & Hollister LLP |
| amir@konicekdillonlaw.com | 111 East Wacker Drive, Suite 2600 |
| | Chicago, IL 60601 |
| | joakley@taftlaw.com |
| | trowden@taftlaw.com |
| | bmorrell@taftlaw.com |

RE:   Frost's Remaining Discovery Deficiencies after Motion to Compel

Dear Amir, James, Todd, and Ben:

I write in follow up to my February 9, 2024 letter and Frost's subsequent production of documents and amended discovery responses after the Court's July 30, 2024 Order, Docket Number 84 (the "Order"), which compelled Frost's supplemental production of documents on a number of Moore's discovery requests.

There are still numerous deficiencies with Frost's discovery responses and document production following the supplement, and we have not resolved certain issues that Moore previously identified but did not move on. Those items are outlined below.

Please address these deficiencies and further supplement Frost's production, including with proper Bates labels, by **September 20, 2024** or we will be forced to move the Court to enforce its Order requiring Frost's production of documents, and/or file a second Motion to Compel for deficiencies not previously moved on. If you have any objection to the below items, please let us know the same on or before **September 13, 2024**.

### Interrogatories

**Interrogatory Verification**

None of the interrogatory responses or supplemental responses have been verified by a representative of Frost. Please provide a verification along with a further supplement on the issues outlined below.

Amir R. Tahmassebi
September 6, 2024
Page 2

**Interrogatory No. 3**

The Court ordered Frost provide information responsive to Interrogatory No. 3, (which requested that for each customer identified in response to Interrogatory No. 2, Frost identify the amount of damages and the confidential information or trade secret Frost contends Moore used in his solicitation or diversion efforts, and whether the information constitutes confidential information or a trade secret). (Dkt. 84, at 1-6.)

We confirm Frost has supplemented its response to Interrogatory No. 3 to refer to Frost's August 27, 2024 supplemental production (FROST_0026995.XLSX, FROST_0027000.XLSX and FROST_0027001.XLSX). However, Frost has not specified the trade secret it contends Moore used for each individual customer in his alleged solicitation or diversion efforts.

Please provide the specific confidential information or trade secret Frost alleges Moore used to solicit each customer. If Frost contends that Moore used all confidential information and trade secrets that Frost has alleged for solicitation or diversion efforts of all customers, state that.

**Interrogatory No. 4**

In response to Interrogatory No. 4 (which requested Frost identify all employees, owners, members, or other representatives with knowledge of the 'reasonable measures to safeguard its trade secrets' as alleged in paragraphs 39-41 of the Amended Complaint, including, but not limited to (i) the referenced confidentiality agreements, (ii) the 'policy of safeguarding its systems with password productions,' and (iii) the 'policy of terminating access to confidentiality information at the conclusion of an individual's employment,'") Frost ultimately identified Victor Gill and Ryan Kreager.

Please confirm there are no additional employees, owners, members, or other representatives with knowledge of the "reasonable measures to safeguard its trade secrets" that Frost undertook.

**Interrogatory No. 5**

The Court ordered Frost provide information responsive to Interrogatory No. 5 (which requested Frost identify all employees who resigned from Frost or its predecessor on or after October 1, 2021 and the date of resignation from each). (Dkt. 84, at 7.)

We confirm Frost has supplemented its response to Interrogatory No. 5 to refer to Frost's August 23, 2024 supplemental production folder labeled "Resignations." The supplemental production, however, still does not contain resignation dates for Messrs. Baglien or LaRue.

Please provide the resignation dates of Messrs. Baglien and LaRue and confirm Frost has no additional information related to employee resignations between October 1, 2021 to present.

Amir R. Tahmassebi
September 6, 2024
Page 3

**Interrogatory No. 7**

The Court ordered Frost provide information responsive to Interrogatory No. 7 (which requested Frost to identify with particularity the trade secrets referred to in Paragraph 42 of the Amended Complaint). (Dkt. 84, at 1-6.)

We confirm Frost has supplemented its response to Interrogatory No. 7 by stating that the general customer lists, contact information, and pricing information generally identified is found in the spreadsheets produced in the August 27, 2024 supplemental production (FROST_0026995.XLSX, FROST_0027000.XLSX and FROST_0027001.XLSX). Frost additionally includes the category of "information related to specific vendor and supplier performance" as an alleged trade secret and points to the previously produced "customer complaint file" as housing information related to this alleged trade secret.

Please confirm there are no additional facts that support the alleged categories of trade secrets referred to in Paragraph 42 of the Amended Complaint.

**Interrogatories 8 and 9**

The Court ordered Frost provide information responsive to Interrogatories 8 and 9 (which requested Frost to state all facts supporting Frost's allegations in Paragraph 43 of the Amended Complaint that "Moore acquired and used Frost's trade secrets while employed by Frost and knew or should have known this information was not to be used after his departure from Frost. Despite this, Moore used this information to solicit Frost's customers" and to identify with particularity the trade secrets referenced in Paragraph 43). (Dkt. 84, at 1-6.)

We confirm Frost has supplemented its response to Interrogatory 8 and 9 to refer to its August 27, 2024 supplemental production of spreadsheets (FROST_0026995.XLSX, FROST_0027000.XLSX and FROST_0027001.XLSX) as containing information related to the trade secrets it alleges were used by Moore in paragraph 43 of the Amended Complaint. With regard to Interrogatory 8, Frost alleges Moore had access to the spreadsheets and believes Moore used to acquire customers for TAPCO. With regard to Interrogatory 9, Frost alleges that the information was kept on a password protected program called HUBSPOT and that Moore knew that the contact information for the municipalities was protected and that the customer list and expiration date of the contracts were protected by virtue of the password protected program.

Please confirm that there are no additional facts that support the allegations of paragraph 43 of the Complaint.

**Interrogatory No. 11**

In response to Interrogatory No. 11 (which requested Frost to identify any employee of Frost Control that remained employed at the time Frost acquired Frost Control or its assets, including the employee's title), Frost ultimately identified Joseph Maffetone, Ryan Kreager and Michael Fallon, but did not provide such employee's titles.

Amir R. Tahmassebi
September 6, 2024
Page 4

Amir later provided titles for the identified employees via letter, but Frost has not supplemented the interrogatory responses. The supplemental responses from August 2024 also state that Michael Fallon was previously listed incorrectly as he was not a direct employee of Plaintiff, but it appears that he is still listed in the interrogatory response.

Please see above and supplement the response to Interrogatory No. 11 with the titles of identified employees, Joseph Maffetone, Ryan Kreager, and Michael Fallon (if applicable, otherwise remove him from the interrogatory). Further, confirm that there are no additional retained employees or provide the names and titles of additional employees identified.

**Document Production and Responses**

**Search Terms and parameters**

We previously requested and you committed to providing us by September 3, 2024, the search terms, date parameters, and list of custodians that Frost used to search for responsive documents. However you did not provide this information by September 3. Ben later committed to providing these items by the end of this week. We have not received it as of the transmittal of this letter. Please provide these items as soon as possible – this should not be a difficult undertaking as the information should be known not just to Frost but to you as counsel.

**Privilege Log**

Please also provide a privilege log as to any responsive document withheld under an argument of privilege. The log should comply with the parameters as outlined in Moore's first set of document requests.

**RFP 1**

In response to RFP 1 (which asked for all documents that reflect or discuss Moore's resignation from Frost Control), Frost ultimately only produced Moore's resignation email and noted that Frost has not located additional documentation but is searching archived databases to confirm whether additional correspondence exists.

Please provide additional context into the circumstance and timing of this archived database search, as well as Frost's document retention policies. It seems highly unlikely there would be no additional documents or communications that internally or externally discuss Moore's resignation.

**RFP 2**

The Court ordered Frost provide documents responsive to Request 2 (which asked for all letters, emails and correspondence by which either Frost or Frost Control employees gave notice of their resignation since October 1, 2021). (Dkt. 84, at 7.)

Amir R. Tahmassebi
September 6, 2024
Page 5

We confirm Frost has amended its response to Request 2 to refer to its August 23, 2024 production and folder labeled "Resignations" that has additional documents relating to the resignation of Frost employees between October 21, 2021 to the present.

Please confirm Frost has completed its production of documents relating to employee resignations or supplement.

Additionally, these documents were not Bates labeled, please reproduce with proper Bates labeling.

**RFP 8**

The Court ordered Frost provide documents responsive to Request 8 (which requested all customer complaints regarding Frost Control, including, but not limited to, customer reports of lack of communication with Frost Control). (Dkt. 84, at 9-10.)

We confirm Frost amended its response to Request 8 to refer to its August 23, 2024 supplemental production and folder labeled "Attachments from Prev Production." Additionally, Frost states in its amended response that the attachments produced are "all the attachments Plaintiffs current [sic] have in their custody, possession or control."

While there are some attachments in the supplemental production related to the emails from the January 19, 2024 production, the production is still deficient in that there are still attachments that were not produced.

Please supplement the production to provide all attachments or explain why attachments clearly noted in email chains produced by Frost are not in the possession, custody, or control of Frost.

Finally, please reproduce the January 19, 2024 production and the supplemental August 23, 2024 production with proper Bates labeling.

**RFP 10**

In response to Request 10 (which requested all documents that support, discuss, or reflect Frost's alleged damages), Frost provided certain documents responsive to these requests. After reviewing, we identified various questions we had with regard to this production. Amir previously stated that the remaining issues are a misunderstanding of the production, but did not elaborate. Moore did not move on this request pending more information regarding the alleged misunderstanding, which we have not yet received.

Please address the following outstanding questions regarding issues a-d, below, further elaborating on the misunderstanding of the production, or produce supplemental documents.

We also note that the documents that were produced in response to this request were not Bates labeled. Please also reproduce the documents with proper Bates labels.

Outstanding questions as to Request 10:

a. There are not folders corresponding with the following clients that are listed on the damages spreadsheet: St. Paul, MN; Montcalm, MI; Cheyenne, WY; Lebanon, NH; Winnipeg; Kenosha; Framingham, MA; Pierce County, WA; Fargo, ND; Reno, NV; St. John's, CA; Logan, UT; East Bridgewater, MA; LBJ; Mount Pleasant, MI; Grandville, MI; Walker, MI; Kentwood; Ottawa County, MI; and Leahy Landscaping. Frost's previous production included some contracts and purchase orders related to some of the above-listed projects, and were labeled as being responsive to Requests 12 and 13. Please confirm whether these documents are equally responsive to Request 10. If so, then there are no folders corresponding with the following clients listed on the damages spreadsheet: St. Paul, MN; Pierce County, WA; and Mount Pleasant, MI. Please either produce supporting documents from the applicable clients or state Frost has no supporting documents for damages related to these clients no later than February 23, 2024.

b. There is a folder for "Champaign County, OH" and a listing for "Champaigne County." We assume this is the same client, but please confirm by February 23, 2024.

c. There are folders for Abington, MA; Bath, ME; and Ledyard, CT; however, those clients do not appear on the damages spreadsheet. Furthermore, in Plaintiff's original production of documents responsive to Requests 12 and 13, there are folders for Huntington, IN; Oakland County, MI; and Portage, MI; however, those clients also do not appear on the damages spreadsheet. Please confirm that you are not seeking damages related to these clients no later than February 23, 2024.

d. Within the folders, there are inconsistent documents that were produced. For example, it appears we do not have the full MSA for Abington; a signed order form for the additional units for Champaign; any MSA or other contract for Dublin; a signed 2019 MSA for Wyoming, MI; the terms of the 2020 MSA with Delaware Co; a signed MSA for 2021 for Delaware Co; an MSA for East Grand Rapids; a contract for Kent County; the full MSA for Ledyard, CT; or any contract with TAPCO besides TAPCO's Vendor Supply Agreement. There may be other inconsistencies not identified here either in the original or supplemental production. Please either confirm that Frost has completed its production of documents that support damages for all clients for which it is seeking damages or supplement the production no later than February 23, 2024.

**RFP 13**

In response to Request 13 (which sought purchase orders placed with Frost or Frost Control from January 1, 2020 to the present for all customers for which Frost is seeking damages), Frost referred to the documents produced in response to Request 12. However, it does not appear that all purchase orders were included in that production, and, as outlined in Request 10, it is not clear the universe of clients for which Frost is seeking damage. Moore did not move on this request pending more information regarding the Request 10 production.

Amir R. Tahmassebi
September 6, 2024
Page 7

Please confirm the universe of clients for which Frost is seeking damages, consistent with the clarification of documents responsive to Request 10 and confirm that all purchase orders for those clients have been produced.

### RFP 11

The Court ordered Frost produce documents responsive to Request 11 (which requested all correspondence between Frost and customers for which it is seeking damages from January 1, 2020 to the present. (Dkt. 84, at 10.)

We confirm Frost amended its response to Request 11 to refer to its August 23, 2024 supplemental production. However, Frost's response is still deficient as it only contained correspondence between Frost and customers relating to customers terminating the relationship with Frost.

Please provide *all* correspondence with customers contained in the damage spreadsheet from January 1, 2020.

Additionally, these documents were not Bates labeled, please reproduce with proper Bates labels.

### RFP 24

The Court Ordered Frost produce documents responsive to Request 24 (which requested all documents that support Frost's allegations in paragraph 43 of the Amended Complaint) (Dkt. 84, at 1-6.)

We further confirm Frost amended its response to Request 24 to refer to the supplemental production on August 27, 2024 consisting of three spreadsheets (FROST_0026995.XLSX, FROST_0027000.XLSX and FROST_0027001.XLSX). The spreadsheets contain what seem to be customer contact information beyond the customers Frost has identified as relevant to damages and Frost employees besides Mr. Moore. The spreadsheets do not expressly address the allegations of Amended Complaint Paragraph 43 to Moore's use of Frost's trade secrets, knowledge that such trade secrets should not be used, or solicitation of clients.

Please confirm Frost does not have documents responsive to Request 24 or supplement the production.

Additionally, we believe the documents have been produced with Bates labels that are not consecutive to the Bates labeled documents in this matter. Please reproduce with proper, consecutive Bates labeling.

### RFP 17

In response to Request 17 (which requested all contracts between Frost or Frost Control and Moore including contracts containing restrictive covenants), Frost ultimately referred to Moore's "employment contract and confidentiality agreement." We understand the Confidential

Amir R. Tahmassebi
September 6, 2024
Page 8

Information and Invention Assignment Agreement is the only agreement that has been produced, and is referred to throughout as the Confidentiality Agreement.

Please confirm Moore's "employment contract" and the "confidentiality agreement" are the same document titled Confidential Information and Invention Assignment Agreement. If not, provide the "employment contract" and any other contracts between Frost or Frost Control and Moore.

**RFP 25**

The Court ordered Frost produce documents responsive to Request 25 (which sought all documents and correspondence, including internal correspondence, that regard Moore, TAPCO or the Litigation from March 1, 2022 to the present), to which Frost previously stood on its objections.

We confirm Frost amended its response to refer to its August 23, 2024 supplemental production folder "Comms with Cory Moore", in addition to its previous productions. Plaintiff has confirmed that it has produced "all non-privileged documents in its possession, control, and custody relating to Moore, TAPCO and the litigation." However, "Comms with Cory Moore" folder contained only one email. It seems highly unlikely there would be just one non-privileged communication that discusses Moore, TAPCO, or the Litigation.

Please provide additional context into the circumstances and timing of the archived database search including search terms, custodians, and date parameters, as well as Frost's document retention policies.

Additionally, this document was not Bates labeled, please reproduce with proper Bates label.

We look forward to your response and the supplementation of Frost's discovery responses and documents by **September 20, 2024**. If we do not receive additional information by this date, Moore reserves all rights to enforce the Order requiring Frost to produce this information as well as his right to move to compel deficiencies not encompassed by the Order.

Best regards,

GODFREY & KAHN, S.C.

Christie B. Carrino

31768089.1